No. 96-224

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

YELLOWSTONE WATER SERVICE, and
EMPIRE FIRE AND MARINE INSURANCE COMPANY,

Plaintiffs and Respondents,

v.

DAVID GEORGE DOTTING, and RONALD
SANNES, d/b/a/ UNITED GLASS,

Defendants and Appellants.

**FILED**

NOV 26 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

James A. Patten; West, Patten, Bekkedahl
& Green; Billings, Montana

For Respondents:

Tiffany B. Lonnevik; Brown, Gerbase, Cebull,
Fulton, Harman & Ross; Billings, Montana


Submitted on Briefs:  September 26, 1996

Decided:  November 26, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Appellants David Dotting and Ronald Sannes appeal from the findings of fact, conclusions of law, and judgment entered by the Thirteenth Judicial District Court, Yellowstone County. The District Court concluded that Dotting's negligent operation of his vehicle actually and proximately caused the accident which occurred on January 26, 1993, and that Sannes, as his employer, is liable for all damages caused by Dotting. We affirm.

The issue on appeal is whether the District Court erred in determining that Dotting failed to yield the right-of-way and that Dotting's negligence actually and proximately caused the accident.

### FACTS

On January 26, 1993, on Montana Highway 201, a semi-truck transporting waste water driven by Kevin Dean Valnes and owned by Yellowstone Water Service (YWS) was headed in a westerly direction. At the same time, Dotting was driving a semi-truck owned by his employer, Sannes, headed south on a dirt road that ultimately intersects with Highway 201. The weather conditions were clear and the main road surface was dry.

Highway 201 is hilly, and one hill crests 700 feet east of the intersection with the dirt road, thus limiting the visibility from the intersection of west-bound traffic. Portions of Highway 201 east of the intersection, however, are visible from time to time from various points along the dirt road, including the intersection. It is only the final quarter mile of the dirt road, and only as to traffic between the two hills nearest the

2

intersection, that west-bound traffic is not clearly visible. A vehicle traveling south on the dirt road and arriving at the intersection does not have an opportunity to observe west-bound traffic on Highway 201, which is cresting one of the hills, unless it waits at the intersection for a sufficient period of time to allow possible traffic that cannot be seen between the two hills to clear. Both drivers were familiar with this intersection and the hazards posed by the limited visibility.

Dotting stopped his truck at the intersection. The parties disagree whether he stopped his truck for a short period or for two to three minutes, as Dotting testified in his deposition. Dotting then slowly proceeded into the intersection. Valnes testified that this occurred after he crested the hill, but Dotting testified that he saw no traffic when he entered into the intersection. In any event, Dotting pulled out onto Highway 201 and his trailer had not completed its turn before the truck driven by Valnes approached the intersection at approximately 55 m.p.h. Valnes was forced to take evasive action by applying his brakes but was unable to bring his tractor/trailer to a stop in the less than 700 feet distance between him and Dotting. Dotting's vehicle crossed the center line while making its turn and thus made it impossible for Valnes to pass Dotting on the left. Valnes therefore drove his truck into the ditch to avoid a collision. The investigating police officer issued a citation to Dotting for failure to yield.

Valnes' overturned tractor/trailer suffered damage in the amount of $14,706.15. Empire Fire and Marine, the insurer of YWS,

3

paid YWS the sum of $12,706.15 for the damages. YWS paid the $2,000 not covered by insurance and subrogated its claims to Empire. YWS and Empire filed a complaint for property damages against Sannes and Dotting. The District Court determined that Dotting failed to operate his vehicle in a careful and prudent manner, thereby breaching his duty owed to YWS, and that his actions actually and proximately caused the accident on January 26, 1993. The District Court rendered judgment on behalf of YWS and Empire against Sannes and Dotting who appeal this determination.

## ISSUE

Did the District Court err in determining that Dotting failed to yield the right-of-way and that Dotting's negligence actually and proximately caused the accident?

We review a district court's findings of fact to determine whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. This Court has adopted a three-part test to determine whether the findings are clearly erroneous. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. The test provides that: (1) the Court will determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence the Court will determine if the trial court has misapprehended the evidence; (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review

4

of the record leaves the Court with the definite and firm conviction that a mistake has been committed. DeSaye, 820 P.2d at 1287.

The standard of review for a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

YWS premises its argument that the District Court did not err in concluding that Dotting was negligent for failure to yield the right-of-way on the basis that the District Court found that Dotting saw or should have seen Valnes and therefore found him to be more at fault than YWS who had the right-of-way. YWS asserts that this finding is supported by substantial evidence in the record and is not clearly erroneous. The court, however, did not make an unequivocal finding that the tractor/trailer driven by Valnes was visible to Dotting and that Dotting did see or should have seen the oncoming vehicle. The court stated that, "Dotting, who had stopped his truck/tractor semi-trailer at a stop sign . . . pulled out in front of Valnes . . . as plaintiff [Valnes] crested a hill 700' from the intersection." Although there is substantial evidence in the record for the court to make a finding that Valnes' vehicle was visible at the time Dotting entered the intersection, the court did not unambiguously state this as one of its findings.

Furthermore, the court did not premise its conclusion that Dotting was negligent upon a finding that the YWS tractor/trailer

was visible to Dotting when he entered the intersection. Rather, the court, in part, based its conclusion that Dotting was negligent on its finding that despite the fact that a "blind spot" did exist, Dotting could nonetheless have seen Valnes had he waited at the stop sign for a sufficient amount of time such that any unseen traffic would become visible. In addition, the court found that Dotting was instructed to wait for a sufficient amount of time to allow for unseen traffic and that it was his usual practice to do so, but on this occasion he did not wait long enough.

Although there is conflicting testimony regarding the length of time Dotting waited at the stop sign, there is substantial evidence to support the court's finding that Dotting could have yielded to oncoming traffic if he waited for the traffic obscured by the hill to become visible. Sannes himself testified that a person could see west-bound vehicles from the intersection before they began their ascent of the hill which crests 700 feet before the intersection. Other witnesses' testimony and photographic exhibits also support this finding. We therefore determine that the District Court's finding that Dotting could have waited for any unseen traffic in the portion of the road not observable from the intersection to clear is based upon substantial evidence which was not misapprehended by the court. This finding is therefore not clearly erroneous.

Utilizing a standard negligence analysis the District Court concluded that Dotting failed to operate his vehicle in a careful and prudent manner when he failed to yield the right-of-way,

6

contrary to §§ 61-8-341 and -344, MCA, and therefore breached the duty he owed to YWS. Dotting argues that the District Court erred in its conclusion that he was negligent because there was no negligence per se since he did not violate a traffic control statute, and further, that he acted as a reasonably prudent person when he entered onto the highway. He argues that he did not fail to yield, as required under § 61-8-341, MCA, but rather, that he waited at the stop sign and seeing no traffic he entered the intersection.

Section 61-8-341, MCA, provides:

(1) The driver of a vehicle shall stop as required by 61-8-344 at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.
(2) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.

The District Court, in its findings, determined that Dotting could have waited for oncoming traffic to become visible before proceeding into the intersection. The court concluded that Dotting's failure to wait was not careful and prudent, but was negligent and in violation of §§ 61-8-341 and -344, MCA.

It is clear from the court's findings that Dotting could have yielded to the vehicle driven by Valnes, which was approaching in

7

such a manner as to constitute an immediate hazard under § 61-8-341, MCA. The extremely low speed at which Dotting entered the intersection, due to the nature of his tractor/trailer and the load he was transporting, would make traffic normally ascending a hill only 700 feet away from the intersection an immediate hazard and would require the driver at the intersection to yield the right-of-way by determining if all oncoming traffic had cleared.

We therefore hold that the court correctly interpreted §§ 61-8-341 and -344, MCA, to apply to Dotting's actions entering the highway from the limited visibility intersection. Furthermore, the court correctly concluded that Dotting actually and proximately caused the accident which resulted in property damage in the amount of $14,706.15.

We therefore affirm the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8