No. 99-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 164

JEANNE GAUDREAU and JERRY MONTELIUS,

Plaintiffs and Appellants,

v.

CLINTON IRRIGATION DISTRICT,

Defendant and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Lon J. Dale; Milodragovich, Dale, Steinbrenner & Binny, Missoula,

Montana

For Respondent:

Fred Van Valkenburg, County Attorney, Robert L. Deschamps, III,

Special Deputy County Attorney

Submitted on Briefs: April 13, 2000

Decided: August 21, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Jeanne Gaudreau (Gaudreau) and Jerry Montelius (Montelius) appeal from the Findings of Fact, Conclusions of Law and Judgment entered by the Fourth Judicial District Court, Missoula County, in favor of the Clinton Irrigation District (CID). We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court err in determining the CID had no duty to prevent flood waters caused by ice jams on the Clark Fork River from entering and overflowing the CID's irrigation system and damaging Gaudreau's and Montelius' property?

¶4 2. Did the District Court err in determining the CID exercised reasonable care in the maintenance of its irrigation system?

¶5 3. Did the District Court err in concluding the CID had no duty to warn Gaudreau and Montelius of the flooding conditions in order to allow them the opportunity to protect their properties?

*BACKGROUND*

¶6 In January of 1996, an extended cold period in western Montana caused substantial ice to form on regional rivers, including the Clark Fork River (Clark Fork). This cold period was followed in early February by warm temperatures and rain, which broke up the ice. The resulting ice floes on the Clark Fork formed ice jams that backed up river water and resulted in extensive flooding in Missoula County.

¶7 Gaudreau and Montelius, her father, operate a horse riding and boarding facility (Facility) outside Clinton, Montana, near Interstate 90 and the Clark Fork. They own

substantial personal property located at the Facility and, although the record is not entirely clear, it appears that Gaudreau owns the real property on which the Facility is located.

¶8 The CID owns and operates an irrigation ditch system in the Clinton area. A headgate (River Headgate), which can be closed to stop flow under ordinary conditions, diverts water from the Clark Fork into a canal (Canal). An earthen dike (Dike) immediately downstream from the River Headgate prevents water from entering the Canal other than through the River Headgate under ordinary conditions. However, the Dike had fallen into a state of disrepair at the time of the flooding.

¶9 Once water enters the Canal, it reaches a junction marked by a series of culverts. One set of culverts (Milwaukee Culverts) passes underneath the old Milwaukee Railroad grade and Interstate 90, where the water enters the main channel of the Canal (Main Channel). Two water regulation devices at the Milwaukee Culverts had apparently acted to partially restrict the flow of water in the past, by means of boards which could be lowered into position in front of the culvert entrances, but neither was operational at the time of the flooding. The Main Channel runs northeast of the interstate, toward and then adjacent to the Facility. Water also flows through a second set of culverts and enters a channel which flows along the southwest side of the interstate. The drawing which follows is a rendition of the CID canal system near Clinton; it is included for illustrative purposes only and is not to scale.

(See map in hard copy)

¶10 Sometime during the evening of February 7, 1996, an ice jam formed on the Clark Fork, downstream from the River Headgate and Dike, which caused river water to back up and overtop the Dike. Flood water and ice entered the Canal and another ice jam formed in the Main Channel upstream from the Facility. This second ice jam resulted in overland flooding of the area adjacent to the Canal, including the Facility, throughout the night of February 7 and morning of February 8. CID members and the local rural fire department discovered the flooding sometime during the late evening of February 7. They worked through the night and eventually were able to stop the flooding during the late morning of February 8 by using a backhoe to force steel plates over the front of the Milwaukee Culverts.

¶11 At around 10:00 p.m. on February 7, the ice jam in the Main Channel was upstream

from the location where it intersected the road to the Facility. Phil Davis, a neighbor and member of the rural fire department, called Montelius and informed him there was a great deal of water in the Canal. Montelius drove to the Facility but did not observe any flooding on the property. Discerning no danger, Montelius returned home to bed.

¶12 Gaudreau received a telephone call between 7:00 and 7:30 a.m. on February 8 informing her that there was water in the arena at the Facility. According to Gaudreau, she and Montelius discovered between 12 and 18 inches of water flooding the arena and stables upon arriving at the Facility. Both later testified to significant real and personal property damage at the Facility as a result of the flooding.

¶13 Gaudreau and Montelius sued the CID for negligence, trespass and nuisance. The parties stipulated to a bifurcated trial on the issues of liability and damages. At the trial on the liability issues, Gaudreau and Montelius abandoned the trespass and nuisance claims and proceeded on negligence theories. The District Court subsequently issued its Findings of Fact, Conclusions of Law and Judgment in favor of the CID and Gaudreau and Montelius appeal. Additional facts necessary to resolution of the issues raised on appeal are set forth below.

## STANDARD OF REVIEW

¶14 We review a district court's findings of fact to determine whether they are clearly erroneous, using the following three-part test:

> (1) the Court will determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence the Court will determine if the trial court has misapprehended the evidence; (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed.

*Yellowstone Water Service v. Dotting (1996),* 280 Mont. 1, 4, 928 P.2d 233, 235 (citations omitted). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Yellowstone Water Service, 280 Mont. at 4, 928 P.2d at 235 (citations omitted).

*DISCUSSION*

**¶15 1. Did the District Court err in determining the CID had no duty to prevent flood waters caused by ice jams on the Clark Fork from entering and overflowing the CID's irrigation system and damaging Gaudreau's and Montelius' property?**

¶16 Gaudreau's and Montelius' first negligence claim was that the CID had a duty to design, construct and maintain an irrigation system that would protect their property against flood waters from ice jams because both flood waters and ice jams are foreseeable events; the CID breached its duty by failing to either construct a headgate at the Milwaukee Culverts or maintain the water regulation devices previously in operation at the Milwaukee Culverts; and the breach caused their property damage.

¶17 The District Court found and concluded that the flooding conditions at issue were unforeseeable. On that basis, it further concluded the CID did not have an affirmative duty to erect or maintain flood control structures which would have protected Gaudreau's and Montelius' property. Gaudreau and Montelius assert error.

¶18 The first element plaintiffs in a negligence action must establish is the existence of a duty of care. *Brown v. Demaree* (1995), 272 Mont. 479, 482, 901 P.2d 567, 569 (citations omitted). "The existence of a legal duty is a matter of law to be determined in the first instance by the trial court." *Latray v. City of Havre*, 2000 MT 119, ¶ 18, 299 Mont. 449, ¶ 18, 999 P.2d 1010, ¶ 18. The measure of the duty of care owed is the scope of the risk which the negligent conduct foreseeably entails. *Estate of Strever v. Cline* (1996), 278 Mont. 165, 173, 924 P.2d 666, 671 (citation omitted).

¶19 Gaudreau and Montelius initially rely on § 85-6-107, MCA, to argue that the CID owed a duty to prevent the flooding in the present case. Section 85-6-107, MCA, provides:

> An incorporated water users' association that is sustaining and responsible for the operations of a works is solely liable for any court action which may be brought against it for any injury or damages occurring on the works caused by a failure to maintain safe working and operating conditions. The state of Montana is not liable for injury to a person or property that occurs on a works as a result of a failure by a water users' association to maintain the works in a safe working and operating condition.

Their reliance on this statute is misplaced.

¶20 First, Chapter 6 of Title 85, MCA, governs water users' associations, not irrigation districts; the latter are governed by Chapter 7 of Title 85, MCA. Gaudreau and Montelius do not provide any argument or authority for the application of § 85-6-107, MCA, to the CID, which is irrefutably an irrigation district. Second, § 85-6-107, MCA, standing alone, does not impose any specific duty or duties, even on water users' associations, but merely disclaims any liability by the state for injuries allegedly caused by state regulation of such entities. *See Limberhand v. Big Ditch Co.* (1985), 218 Mont. 132, 146, 706 P.2d 491, 500. Finally, Gaudreau's and Montelius' action against the CID did not encompass allegations of injury or damages "occurring on the works." Thus, § 85-6-107, MCA, does not support the existence of a duty by the CID.

¶21 The primary factor in determining whether an irrigation district owes a duty to a damaged plaintiff is whether it was foreseeable, as a matter of law, that the district's acts or omissions would pose a risk of injury to the plaintiff. *See Estate of Strever*, 278 Mont. at 173-74, 924 P.2d at 671.

> As a classic opinion states: "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L. R. 1253. That is to say, defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

*Estate of Strever,* 278 Mont. at 174, 924 P.2d at 671 *(quoting Mang v. Eliasson* (1969), 153 Mont. 431, 437, 458 P.2d 777, 781). Under this standard, the CID owed a duty to protect against foreseeable risks or hazards likely to result from its failure to exercise ordinary care in the maintenance of its canal system. Ordinary care is determined by weighing the utility of the conduct in question against the magnitude of the risk involved. Estate of Strever, 278 Mont. at 174, 924 P.2d at 671 (citing Restatement (Second) of Torts § 298 cmt. b (1965)).

¶22 In the context of the present case, Gaudreau and Montelius argue that ordinary care included maintaining flood control devices at the Milwaukee Culverts. Applying the above standards to the present case, the CID owed a duty to maintain flood control measures at the Milwaukee Culverts only if it was foreseeable that failure to do so could result in damage to Gaudreau's and Montelius' property.

¶23 Gaudreau and Montelius challenge the District Court's conclusion that the damaging flood waters in the present case were not foreseeable. They first contend that the District Court's underlying finding that it was not foreseeable that Clark Fork flood water could enter the CID's ditch system--without flood control structures at the Milwaukee Culverts-- is erroneous. In this regard, and assuming *arguendo* that a factual finding on this duty-related question is appropriate, they point to testimony that both high water flooding and ice jams are foreseeable occurrences on the Clark Fork. Our standard in reviewing a finding of fact, however, is not whether record evidence would support a different finding. Our standard is whether the District Court's finding is clearly erroneous, and we begin that review by determining whether the finding is supported by substantial evidence. *See Yellowstone Water Service*, 280 Mont. at 4, 928 P.2d at 235 (citations omitted).

¶24 The record before us contains testimony from several witnesses that, although several floods occurred on the Clinton stretch of the Clark Fork in the past which were greater in magnitude than the flood in the present case, no overland flooding of the land adjacent to the Main Channel occurred. Kristine Handley, an engineer with the U.S. Department of Agriculture, testified that a flood on the Clark Fork in 1981 entailed a greater volume of water than the flood in the present case. Bill Teague, a long-time area resident and former CID commissioner, testified that the 1981 flood completely washed out the CID's old river headgate and a spillway, but that no damaging flood water entered the CID's Main Channel even though there were no water regulation devices at the Milwaukee Culverts at that time.

¶25 Handley also testified about the foreseeability of ice jams. She stated that, although ice jams are known to occur on western Montana rivers, they are unpredictable for size and location. Handley testified further that, because ice jams are so unpredictable, it is nearly impossible to design an irrigation system to prevent flooding due to ice jams. Indeed, Teague and Rex Flansburg, another long-time resident, testified that the flood of 1996 was unlike anything they had ever seen in the Clinton area in terms of destructiveness.

¶26 From the foregoing, we conclude the District Court's finding that the flooding which damaged Gaudreau's and Montelius' property was unforeseeable is supported by substantial evidence and is not otherwise erroneous. We further conclude that the hazard in the present case--Clark Fork water flooding the CID's Main Channel--was not a foreseeable result of failure to maintain flood control structures. "It is axiomatic that in the absence of foreseeability, there is no duty; in the absence of duty, there is no negligence."

*Lopez v. Great Falls Pre-Release Services, Inc.*, 1999 MT 199, ¶ 26, 295 Mont. 416, ¶ 26, 986 P.2d 1081, ¶ 26 (citation omitted). Because the risk that Clark Fork water would flood the CID's Main Channel was not foreseeable, we hold the District Court correctly concluded the CID had no duty to erect or maintain flood control structures at the Milwaukee Culverts.

¶27 **2. Did the District Court err in determining the CID exercised reasonable care in the maintenance of its irrigation system?**

¶28 Gaudreau's and Montelius' next negligence claim was that the CID had a duty to maintain the Canal; it breached the duty by allowing debris to accumulate in the Main Channel; and the negligence caused their injuries in that the debris accumulation caused the ice jam in the Canal which caused flood waters to overtop the Canal and flood their property. The District Court found, however, that no witness who actually observed the Main Channel at the pertinent times testified to observing debris or anything other than naturally-occurring ice in the Main Channel.

¶29 Gaudreau and Montelius assert the District Court's finding that there was no evidence the CID breached its duty to maintain the ditch system is clearly erroneous. In support of their assertion, they point to the report Handley prepared on the causes of flooding in the present case at their request. Handley's report noted a "debris jam" in the Main Channel which caused the overland flooding. On cross-examination, however, Handley testified her use of the term "debris jam" was arbitrary and that she neither personally observed any debris in the Canal nor spoke to anyone who did. The only other evidence Gaudreau and Montelius advance which purports to support their contention that debris existed in the Main Channel is testimony that the CID had no formal, written maintenance plan. The absence of a written maintenance plan bears no relation whatsoever to the existence or nonexistence of debris in the Main Channel, and is not evidence that such debris existed.

¶30 Gaudreau and Montelius do not point to any testimony by a witness who observed debris in the Main Channel at any time; indeed, several witnesses testified to observing a jam in the Main Channel comprised solely of ice. Moreover, the only evidence they cite in support of their allegation of a breach in this regard is Handley's report which, as discussed above, was controverted by her cross-examination testimony.

¶31 After careful review of the record, we conclude the District Court's finding is supported by substantial evidence and is not otherwise clearly erroneous. Consequently, we hold the District Court properly determined the CID exercised reasonable care in the

maintenance of its irrigation system.

**¶32 3. Did the District Court err in concluding the CID had no duty to warn Gaudreau and Montelius of the flooding conditions in order to allow them the opportunity to protect their properties?**

¶33 Gaudreau and Montelius also asserted negligence by the CID via its breach of a duty to warn them of the flooding conditions when CID members became aware of the flood. The District Court concluded the CID had no duty to warn of the impending natural disaster and Gaudreau and Montelius assert error "[i]n light of the case law from Montana, combined with the jurisprudence of other jurisdictions[.]" We are not persuaded.

¶34 Gaudreau and Montelius first cite to *Frederick v. Hale* (1910), 42 Mont. 153, 112 P. 70. There, the plaintiff sued for negligence when the defendant's dam and reservoir gave way during a heavy rain storm and flooded the plaintiff's property. *Frederick*, 42 Mont. at 158-59, 112 P. at 73. The plaintiff alleged the defendant was negligent in failing to construct an overflow spillway, in allowing its dam to fall into a state of disrepair and give way, and in allowing more water to accumulate than the reservoir banks could handle. *Frederick*, 42 Mont. at 159, 112 P. at 73. The plaintiff's theory was that his injury was caused by the defendant's negligence and an unprecedented flood. We approved a jury instruction that, under such circumstances, the plaintiff could recover if the defendant's negligence was the proximate cause of the injury. *Frederick*, 42 Mont. at 167, 112 P. at 75. *Frederick* does not, in any way, address a duty to warn, and that is the issue before us. Moreover, that decision clearly presupposes the existence of the defendant's negligence-- that is, a legal duty and the breach of that duty--while the issue before us here is the existence of such a legal duty. The instruction approved in *Frederick* related to proximate cause--now "cause in fact" or the "substantial factor" test--rather than the foreseeability determination on which the existence of a legal duty must be grounded. *See Estate of Strever*, 278 Mont. at 175-76, 924 P.2d at 672 (citations omitted).

¶35 Gaudreau and Montelius cite next to *Ducey v. United States* (9th Cir. 1987), 830 F.2d 1071. There, a flash flood resulted in the deaths of recreational users of the flood plain on federal land in Nevada and representatives of the decedents sued the federal government. *Ducey*, 830 F.2d at 1072. The United States Court of Appeals for the Ninth Circuit relied on Nevada case law holding that "[a] defendant has a duty to warn foreseeable victims of foreseeable harm" to conclude the government had a duty to warn of the hazards posed by the 100-year flash flood. *Ducey*, 830 F.2d at 1072 (citing *Mangeris v. Gordon* (Nev.

1978), 580 P.2d 481, 483). In turn, *Mangeris* was premised in pertinent part on the absence of a duty to warn, except in those situations where the risk is foreseeable. *Mangeris*, 580 P.2d at 483.

¶36 In *Ducey*, the record reflected the government's awareness, well in advance of the flood at issue, that a "life-threatening, 100-year flood was long overdue. From this awareness, it follows that the government foresaw the danger of a 100-year flood." *Ducey*, 830 F.2d at 1072 (footnote omitted). Because the risks and hazards of such a flood were foreseeable--indeed, they actually were foreseen--the government had a duty to warn those at risk of the hazard of a major 100-year flood. *Ducey*, 830 F.2d at 1073. In the present case, the record is devoid of evidence of foreknowledge or awareness of the likely occurrence of ice jams, or the resulting flooding, which occurred in February of 1996 on and near the CID's canal system on the Clark Fork. More importantly, as discussed above in issue one, the record in this case shows that the flood in the present case was not foreseeable. As a result, *Ducey* has no application here.

¶37 Gaudreau and Montelius also rely on *Ford Motor Co. v. Dallas Power & Light Co.* (5th Cir. 1974), 499 F.2d 400, 412 (citation omitted), in which the United States Court of Appeals for the Fifth Circuit applied Texas law imposing a duty to warn on a person who creates a dangerous situation, even without negligence on his or her part. There, the defendant power company, which owned and operated a reservoir, released significant amounts of water from the reservoir during an abnormally heavy rainfall which flooded the plaintiff's downstream property. *Ford Motor Co.*, 499 F.2d at 405-07. The Fifth Circuit determined that the defendant could be held liable for failing to warn downstream property owners. *Ford Motor Co.,* 499 F.2d at 412. In doing so, however, the Fifth Circuit explained that, while the high waters were the natural result of a rain storm, the power company was the effective monitor of the flood waters because it controlled the rate and flow of the discharge water that flooded the plaintiff's property. *Ford Motor Co.,* 499 F.2d at 413. The defendant having created the dangerous situation at issue, the Texas duty to warn applied. *Ford Motor Co.,* 499 F.2d at 412-13 (citations omitted).

¶38 *Ford Motor Co.* is inapplicable to the present case. Here, the CID neither created a dangerous condition nor was the effective monitor of the ice jam-caused flooding which damaged Gaudreau's and Montelius' property via any ability to control the rate and flow of the waters. As a result, even if Montana law mirrored that of Texas, the applicable law would be that mere knowledge of a dangerous situation--which the CID certainly acquired at some point during the late evening hours of February 7, 1996--does not impose a legal

duty to warn. *See Ford Motor Co.,* 499 F.2d at 412, note 20 (citations omitted).

¶39 Gaudreau and Montelius have not advanced any applicable authority which would impose a duty to warn on the CID. As a result, we hold the District Court did not err in concluding the CID had no duty to warn audreau and Montelius of the flooding conditions.

¶40 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART
