No. 02-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 334N

_____

IN THE MATTER OF D.D.V.,

A Youth In Need Of Care.

_____

APPEAL FROM:     District Court of the Twenty-First Judicial District,
                 In and For the County of Ravalli, Cause No. DN 2000-24,
                 Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Kelli S. Sather, Attorney at Law, Missoula, Montana

                Brian Smith, Attorney at Law, Worden, Thane & Haines, P.C.,
                Missoula, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; Ilka Becker, Assistant
                Attorney General, Helena, Montana

                George Corn, County Attorney, Hamilton, Montana

                Michael L. Hayes, Hayes and Hays, Hamilton, Montana

_____

                        Submitted on Briefs:   July 24, 2003

                                    Decided:   December 4, 2003

Filed:

        _____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant, the natural father of D.D.V., appeals from the District Court order terminating his parental rights to D.D.V. We affirm. Appellant raises the following issue:

¶3 Did the District Court abuse its discretion in terminating Appellant's parental rights?

¶4 D.D.V.'s mother gave birth to D.D.V. on October 11, 2000, while she was visiting relatives in Butte, apparently not realizing that she was pregnant. Based upon concerns which arose over the mother's inadequate care of the newborn child in the hospital in Butte, the Department of Public Health and Human Services (Department), alleging that the child was exposed to unreasonable risk, petitioned for and was granted temporary investigative authority to place the child into a temporary facility and to investigate the matter. On January 25, 2001, the Department petitioned for temporary legal custody.

¶5 Initially, Appellant did not believe that he was the father of the child, but after tests confirmed his paternity, he discussed treatment plan options with the Department, which developed treatment plans for both Appellant and the mother. Appellant objected to one provision of his proposed treatment plan–Goal II, which provided, among other things, that Appellant would not reside with anyone against whom there were substantiated allegations

2

of child abuse or neglect, or related criminal charges or convictions. Appellant was then residing with his fiancée, whose parental rights to her child had been terminated a short time earlier due to her neglect, inability to comply with a treatment plan, and chronic chemical dependency. After a hearing on Appellant's objection to Goal II, the District Court, concluding that the treatment plan was reasonable and appropriate, approved the plan.

¶6 Thereafter, the Department petitioned for permanent legal custody. Following the mother's stipulation to the termination of her parental rights, the District Court so ordered. The mother is not part of this appeal. After a hearing, the District Court entered findings of fact, conclusions of law and an order granting the petition, thereby terminating Appellant's parental rights. He appeals therefrom.

¶7 *Did the District Court abuse its discretion in terminating Appellant's parental rights?*

¶8 The decision to terminate parental rights is a discretionary ruling reviewed for an abuse of discretion. *In the Matter of K.C.H.*, 2003 MT 125, ¶ 11, 316 Mont. 13, ¶ 11, 68 P.3d 788, ¶ 11. The test for abuse of discretion is whether the district court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *Matter of K.C.H.*, ¶ 11. The standard of review of a district court's findings of facts in a parental termination case is whether the findings in question are clearly erroneous. *Matter of K.C.H.*, ¶ 12. The standard of review of a district court's conclusions of law in such cases is whether its conclusions are correct. *Matter of K.C.H.*, ¶ 12.

3

¶9    The District Court terminated Appellant's parental rights based upon § 41-3-609(1)(f), MCA (1999), which provides for termination of parental rights upon an adjudication that a child is a youth in need of care, and (1) the parent has not complied with or successfully completed an appropriate treatment plan, and (2) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Appellant challenges both the treatment plan and the District Court's finding that the condition rendering Appellant unfit was unlikely to change within a reasonable time.

¶10    Appellant first contends that the District Court abused its discretion by approving a treatment plan which contained inappropriate goals and conditions, and which violated § 41-3-443(2), MCA (codified in the 1999 Code as § 41-3-420, MCA). That statute provides:

> (2) Every treatment plan must contain the following information:
> (a) the identification of the problems or conditions that resulted in the abuse or neglect of a child;
> (b) the treatment goals and objectives for each condition or requirement established in the plan.

¶11    Appellant argues that, in violation of this provision, the treatment plan did not identify the problems or conditions which resulted in the abuse or neglect of D.D.V. He argues that the reasons for the Department's original intervention by temporary investigative authority, i.e., the mother's inadequate care of D.D.V. in the hospital, had nothing to do with him. Further, he notes that the Department's later petition for temporary custody referenced him only peripherally. Thus, Appellant asserts that the treatment plan's focus on his drug and alcohol use, domestic abuse issues, the attachment and bonding with his son and his contact with his fiancée were unrelated to the problems causing D.D.V.'s neglect, and therefore, did

4

not comply with the statute.  Appellant maintains that, consequently, the entire treatment plan was inappropriate, and that the District Court erred in approving the plan.

¶12    However, we considered such a challenge to a treatment plan in *Matter of K.C.H.*  There, as here, the Department intervened shortly after the child's birth, making an emergency placement of K.C.H. directly from the hospital.  Thus, K.C.H. had not been abused nor neglected.  K.C.H.'s father argued that his treatment plan was not appropriate because "K.C.H. was never actually abused and, consequently, his treatment plans necessarily failed to address the 'problems or conditions that resulted in the abuse or neglect of K.C.H.'"  *Matter of K.C.H.*, ¶ 25.  However, we rejected that argument, noting that the father had ignored § 41-3-102(7)(a)(ii), MCA (1999), which provides that child abuse also includes a "substantial risk of harm to a child's health or welfare."   We stated:

> While the Appellant is correct that his treatment plans did not identify the "problems or conditions that *resulted* in the abuse" because, as noted above, no actual abuse occurred, both of his plans did identify the problems or conditions creating the substantial risk of harm to the health and welfare of K.C.H., that is, the lack of a stable home and safe environment. . . . Appellant's treatment plans put the onus on *him* to provide a safe environment for K.C.H.  Both of Appellant's treatment plans listed one of his primary goals as to "provide a stable home [for] his child with adequate housing and income."   Therefore, because Appellant's treatment plans did identify the threshold "problems or conditions" creating the substantial risk of harm to the health and welfare of K.C.H., specifically that he . . . provide K.C.H. a stable home with adequate housing and income, the plans were appropriate under § 41-3-443, MCA.

*Matter of K.C.H.*, ¶ 25.

¶13    The reasoning of *Matter of K.C.H.* is applicable here.  The single objective of Appellant's treatment plan was "to provide a safe, stable, nurturing environment for his

child." The goals thereunder required Appellant to address drug and alcohol use, domestic abuse, anger, parenting skills and bonding with D.D.V. Further, the plan restricted contact with Appellant's fiancée because of her chronic chemical dependency and child neglect history. All of these goals were directed at providing a safe and nurturing environment for D.D.V. Although the reasons for the Department's initial intervention with D.D.V. did not involve Appellant, Appellant's problems were nonetheless relevant to the risks of harm to D.D.V., as defined by § 41-3-102(7)(a)(ii), MCA (1999), and the treatment plan appropriately addressed them. Therefore, the statute was not violated, and the District Court did not abuse its discretion in approving the plan.

¶14 Appellant next contends that the District Court clearly erred in finding that his condition of being unfit to parent D.D.V. was unlikely to change within a reasonable time. He cites to portions of the testimony offered at the termination hearing indicating that he was cooperative with police when arrested for the domestic abuse incident on July 10, 2000; that he had addressed anger management issues but could not address the July 10, 2000, incident because he did not remember it; that there were perceived shortcomings in the advice and support given to Appellant by social workers; that he had requested a psychological evaluation, but one was not performed; and that, according to one witness, the home maintained by Appellant and his fiancée was clean. Appellant argues therefrom that the evidence was insufficient to support the statutory requirement that his condition be "unlikely to change within a reasonable time."

6

¶15 The District Court addressed this issue at length in its factual findings. In consideration thereof, it found that Appellant was chemically dependent and had "a history of violent and uncontrolled angry behavior" which led to a record of involvement with law enforcement back to 1993, including two convictions for assaulting domestic partners. It found that the anger management classes he was ordered to attend by the Washington courts, prior to moving to Montana, had little apparent effect upon Appellant's behavior, because he was thereafter convicted of assaulting his fiancée. Appellant failed to complete the anger management treatment ordered by his treatment plan in this case. The District Court also noted Appellant's "open refusal" to comply with the treatment plan's restriction on living with someone who had abused or neglected a child previously. In fact, shortly after his treatment plan was approved, Appellant proceeded to marry his fiancée, whom the court found to be an untreated addict whose "chemical addiction poses an unreasonable risk to fifteen month old [D.D.V.]," and also increased Appellant's own risk of drug relapse. Further, the District Court found that Appellant's motivation to parent his son was suspect throughout the case, and that Appellant "failed to interact appropriately with his son or demonstrate that he could parent during more than fifty (50) visits provided by" the Department. Appellant does not contest any of these factual findings, implying only that the findings should have been mitigated by the testimony to which he cites.

¶16 It is the function of the district court, not the appellate court, to resolve conflicts in the evidence. *Pankratz v. Teske*, 2002 MT 112, ¶ 12, 309 Mont. 499, ¶ 12, 48 P.3d 30, ¶ 12. It is not our duty to determine "whether record evidence would support a different finding,"

but, rather, that the district court's findings are supported by substantial evidence. *Gaudreau v. Clinton Irrigation District*, 2001 MT 164, ¶ 23, 306 Mont. 121, ¶ 23, 30 P.3d 1070, ¶ 23. Appellant's selective references to hearing testimony which may provide an excuse for his noncompliance with treatment goals refutes neither the District Court's factual findings nor its conclusion that Appellant's condition was unlikely to change within a reasonable time. We conclude there was sufficient evidence to support the District Court's findings. As the State notes, Appellant's single action of marrying his fiancée, despite the risks presented thereby to D.D.V., was a knowing violation of the treatment plan which clearly revealed Appellant's disinterest in complying with the plan or providing a safe home for D.D.V.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA COTTER