No. 01-377

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 112

DAVID PANKRATZ,

Petitioner and Appellant,

v.

STEPHANIE TESKE,

Respondent, Respondent,
and Cross-Appellant.

APPEAL FROM:     District Court of the Seventeenth Judicial District,
In and For the County of Phillips,
Honorable John C. McKeon, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Donald A. Ranstrom, Sias & Ranstrom, Chinook, Montana

For Respondent:

James D. McKenna, Walsh & McKenna, Bozeman, Montana

Submitted on Briefs:   February 7, 2002

Decided:   May 30, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1   David Pankratz (Pankratz) appeals from the Seventeenth Judicial District Court, Phillips County, order denying his petition for enforcement and/or modification of Parenting Plan. Stephanie J. Teske (Teske) cross-appeals the District Court's determination of attorney's fees.

¶2   We address the following issues on appeal:

¶3   1.   Was the District Court's finding that Teske complied with certain portions of the Parenting Plan clearly erroneous?

¶4   2.   Did the District Court abuse its discretion in determining the amount of attorney's fees and costs to be recovered by Teske?

*Facts and Procedural Background*

¶5   Pankratz and Teske are the parents of one minor child, Austyn Teske, born June 6, 1994.  Pursuant to a parenting plan issued in 1995, Austyn lived primarily with Teske, with reasonable visitation granted to Pankratz.  In 1999, the Parenting Plan was modified to provide that Austyn would live primarily with Pankratz, with restricted visitation by Teske for a period of six months.  During that period, Teske had visitation with Austyn on alternating weekends between the hours of 8 a.m. and 8 p.m.  The modified Parenting Plan included a provision stating, "During the initial six (6) month period of this parenting plan, . . . Stephanie hereby agrees to provide written authorization to each of the above-identified programs [Alcoholic's Anonymous and domestic violence counseling], instructing said program to confirm, in writing to

2

counsel for David . . . Stephanie's participation in such program, listing her dates of attendance, describing her degree of active participation therein and providing an approximate date of completion of such program." The plan further provided that if Teske complied with all of the conditions for the six-month period, her visitation with Austyn would change to alternating full weekends, alternating holidays, and the summer school vacation, except for a period of three continuous weeks with Pankratz. The modified Parenting Plan was approved by the court on August 5, 1999.

¶6 Disputes arose between the parties concerning the required confirmation of Teske's participation in AA and domestic violence counseling. Teske claimed that she could not obtain the required confirmation because the programs she was involved in operated under strict confidentiality rules. Pankratz insisted on some form of confirmation of Teske's participation because her past behavior demonstrated a lack of credibility. In January 2000, Teske's attorney sent a letter to Pankratz's attorney which included a copy of a letter from Karen Furu (Furu), a chemical dependency counselor, confirming that it was impossible to provide the type of proof requested in the Parenting Plan, and two letters from Teske's probation officer, Steve Ette (Ette). Teske was under a probation requirement to attend AA meetings and her probation officer felt that she was fully complying with all of her probation requirements.

¶7 Despite these assurances, Pankratz did not believe Teske had complied with the requirements of the Parenting Plan and refused to allow Teske to have overnight visitation with Austyn. On February 3, 2000, Pankratz filed a petition for enforcement and/or modification of the Parenting Plan, requesting that the District Court fully enforce Teske's disclosure obligation and to extend Teske's visitation restrictions. The District Court held a hearing and issued Findings of Fact and Conclusions of Law. The court concluded that the confirmation condition in the Parenting Plan was impossible to perform and could not form the basis for a contempt finding and that amendment of the Parenting Plan to extend visitation restrictions was not in Austyn's best interest. The court also concluded that Teske, as the prevailing party, was entitled to recover reasonable attorney's fees and costs incurred. In response to this finding, Teske filed a request for judgment in the amount of $4667.79. This included 30.7 hours of attorney's service at $120.00 per hour and $983.79 in costs. The court reduced the hourly attorney's service fee to $80.00 per hour and deducted several items included in the costs and ultimately awarded Teske $2451.09 for her attorney's fees and costs. Pankratz appeals and Teske cross-appeals.

*Standard of Review*

¶8 We review a district court's findings to determine whether those findings are clearly erroneous. *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 15, 307 Mont. 60, ¶ 15, 36 P.3d 874, ¶ 15. Findings are clearly erroneous if they are not supported by

4

substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made.  We will reverse a district court's decision relating to custody only where an abuse of discretion is clearly demonstrated.  *Arneson-Nelson*, ¶ 15.

¶9   Was the District Court's finding that Teske complied with certain portions of the Parenting Plan clearly erroneous?

¶10  Pankratz argues that the requirement that Teske provide confirmation of her participation in AA and domestic violence counseling was a condition precedent to her right to expanded visitation under the modified Parenting Plan and that the District Court should have found her in breach "and ordered her to sign and deliver the required written information releases."  He further argues that the District Court should not have relied on Teske's probation officer's testimony because he, in turn, relied on Teske's representations that she had attended AA meetings.

¶11  Teske argues that the Parenting Plan is unlike a true contract and "[s]ince the District Court's prior decision was the ultimate source of the existing parenting plan, that court should be given great deference in the way in which the plan was interpreted and enforced."

¶12  We begin our analysis by noting that it is well established in Montana that where the interests of minor children are concerned, a district court is not bound by an agreement reached by the parties. *In re Marriage of Syverson* (1997), 281 Mont. 1, 9, 931 P.2d 691, 696.  The trial court is in a better position than this Court to resolve child custody issues.  The district court's decision will be upheld unless a clear abuse of discretion is shown.  *Arneson-Nelson*, ¶ 22.  It is the function of the district court to resolve conflicts regarding evidence.  *Arneson-Nelson*, ¶ 22.

¶13   There was conflicting evidence before the District Court on the feasibility of obtaining confirmation of Teske's participation in AA and domestic violence counseling.  Teske's probation officer, Steve Ette, testified that tracking attendance at AA meetings has been a problem for the Probation and Parole Bureau.  He stated, "very few people will give up their names or their full names, last names, to verify the fact that they were at the AA meetings, and the confidentiality involved, the only thing we can go by is what the people say."  Ette also testified that Teske was subject to random drug and alcohol screenings, that he thought Teske was truthful about her attendance at AA meetings and domestic violence counseling and that he believed she was making a sincere effort to deal with alcohol and domestic violence issues in her life.

¶14   Additionally, Teske's counselor, Karen Furu, testified by deposition that AA and the domestic violence group would have a problem giving the confirmation of attendance sought, even with Teske's release.  Furu explained,  "you are violating their rights of anonymity and that's one of the - - especially AA, that's one of the basic tenants of AA."  When asked what her response to a preview of the confirmation requirement in the modified Parenting Plan would have been, Furu testified that, "Very simply, I would have thought you were crazy."

¶15   Furu also testified that Teske had recently completed a 16-week, 25-hour group counseling program designed to help people "find a better way of dealing with their thinking and their behaviors and not be abusive."   She testified that Teske's

7

participation in the group was very good, she always attended the sessions and participated fully in discussions, spent a lot of time on her assignments and responded well to feedback. Furu further testified that she had no concerns about Teske's ability to safely care for her child overnight or for a longer period of time.

¶16 After reviewing the entire record, we cannot say that the District Court's findings concerning the impossibility of obtaining the required confirmations are clearly erroneous.

¶17 Pankratz next argues, quite vigorously, that because the District Court had found Teske not credible at a former hearing, the court should not have relied on her assurances. He also pointed out that both Furu and Ette relied on Teske for their information regarding her attendance at AA meetings. Therefore, he argues, the court's finding that Teske adequately attended AA meetings is clearly erroneous.

¶18 Again, we reiterate the time honored principle that district courts are in the best position to judge the credibility of witnesses and the weight to be given evidence. *Renner v. Nemitz*, 2001 MT 202, ¶ 12, 306 Mont. 292, ¶ 12, 33 P.3d 255, ¶ 12. The District Court heard testimony from Teske, Pankratz, and Ette and had the deposition testimony of Furu. We will not second guess the District Court's determination here.

¶19 We conclude that the District Court's findings concerning Teske's compliance with the modified Parenting Plan are supported by substantial evidence and are not clearly erroneous.

*Issue 2*

8

¶20 Did the District Court abuse its discretion in determining the amount of attorney's fees and costs to be recovered by Teske?

¶21 Teske argues that there is no legal basis for the District Court's decision to reduce her attorney's fees by approximately 48 percent merely because the attorney and the party live outside the judicial district in which the legal action occurred. Teske also notes that Pankratz did not object to the requested fees and costs.

¶22 Pankratz argues that the reduction in fees was within the District Court's discretion and that the District Court was sufficiently familiar with the parties and counsel to make a proper determination.

> The determination of reasonable attorney's fees is not subject to precise calculation or a formulaic approach. We previously have stated that the following factors should be considered as guidelines in making such a determination: (1) the amount and character of services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience required; (6) the attorneys' character and standing in their profession; and (7) the result secured by the services of the attorneys. These factors are not exclusive, however, and district courts may consider other factors as well. Thus, the reasonableness of attorney's fees must be ascertained under the unique facts of each case.

*Chamberlin v. Puckett Construction* (1996), 277 Mont. 198, 205, 921 P.2d 1237, 1241-42 (citations omitted).

¶23 In its Judgment awarding attorney's fees to Teske, the District Court stated that the character and amount of services rendered were not unusual; the time indicated was needed for court ordered mediation efforts, hearing preparation and attendance; the litigation was important; Teske's counsel demonstrated professional

9

skill and experience as well as good character and standing in his profession. Nonetheless, the court noted that the billable rate for legal services in the Seventeenth Judicial District could be as low as $45.00 per hour and an average rate was $80.00 per hour. Therefore, the District Court awarded Teske attorney's fees at the $80.00 per hour rate.

¶24 Under the facts of this case, we cannot say that this was an abuse of the District Court's discretion. The court considered the appropriate factors in addition to the billable rate in its judicial district. The District Court did not abuse its discretion in determining the amount of attorney's fees and costs to be recovered by Teske.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE

10