No. 05-149

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 212

IN RE THE MARRIAGE OF

ARNE JOHN JACOBSEN,

   Petitioner and Respondent,

 v.

MINNIE LARUE (JACOBSEN) THOMAS,

   Respondent and Appellant.

APPEAL FROM:  The District Court of the Fourth Judicial District,
       In and For the County of Missoula, Cause DR 01-69,
       Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

      William T. Jennings, Bailey & Jennings, LC, Orem, Utah

    For Respondent:

      Evonne Smith Wells and Torian Donahoe, Attorneys at Law,
      Missoula, Montana

      Clare E. Anderson, Anderson & Anderson, PLLP, Missoula, Montana
      (Guardian Ad Litem)

         Submitted on Briefs: February 8, 2006

            Decided: August 29, 2006

Filed:

    _____
          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Minnie LaRue Thomas ("LaRue"), formerly Minnie LaRue Jacobsen, appeals the judgment of the District Court for the Fourth Judicial District, Missoula County, which modified the parties' parenting plan. On appeal, LaRue objects to the modification on four independent grounds related to the circumstances and manner in which the District Court adopted the new plan. Because we find her second assignment of error dispositive, we do not consider the other three.

¶2 The sole issue under review, therefore, is whether the District Court erred when it modified the parenting plan without taking testimony, hearing evidence, and entering findings of fact and conclusions of law regarding a change in circumstances or the statutory criteria set forth in §§ 40-4-212 and -219, MCA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parenting plan at issue in this case has been the subject of protracted litigation in the District Court, as well as a previous appeal to this Court (*see Jacobsen v. Thomas*, 2004 MT 273, 323 Mont. 183, 100 P.3d 106). On May 14, 2001, the District Court entered a decree dissolving LaRue's marriage to Arne John Jacobsen ("Arne"). Incorporated into the decree was a stipulated parenting plan for the parties' two children (Jonah, born March 1997, and Savannah, born August 1998), pursuant to which LaRue and Arne were to share parenting of the children equally on an alternating week schedule.

¶4 Following contempt motions filed by Arne in May and July 2001, the District Court appointed a guardian ad litem ("GAL") for the children. In due course, the GAL recommended that Arne be made the primary residential parent of the children at the

2

location of his choice. The court held hearings in October and November 2001, after which it vacated the stipulated parenting plan, issued a holiday season parenting schedule, and granted Arne's request to relocate with the children to Park City, Utah.

¶5 Eleven months later, in October 2002, following numerous proceedings in the District Court, the submission of a final report by the GAL, and a final hearing held August 20, 2002, the District Court issued an order naming Arne as the primary caregiver and adopting a parenting plan proposed by Arne.[1] Pursuant to this plan, the children were to reside with Arne during the school year and with LaRue during the summer months, with additional visitation dates by the non-residential parent (LaRue during the school year and Arne during the summer months) specified in the plan.

¶6 LaRue appealed the District Court's order. Among other things, she claimed that modification of the stipulated parenting plan was improper because the District Court had not found that there was a change in circumstances warranting a modification and because the District Court had failed to properly assess the best interests of the children. *See Jacobsen*, ¶ 41. We affirmed on September 28, 2004, holding (with respect to this particular claim) that while the District Court had not used the "change of circumstances" language, the reality that a change in circumstances had occurred was implicit in the court's findings, *see Jacobsen*, ¶ 44, as was the court's assessment of the best interests of the children, *see Jacobsen*, ¶ 45.

---

[1]The court's twenty-four-page order was supported by extensive findings of fact, a comprehensive assessment of most of the "best interest of the child" and "parenting" factors (*see* § 40-4-212(1), MCA), and conclusions of law.

3

¶7     Meanwhile, LaRue filed a motion to appoint a special master to assist her and Arne in resolving their ongoing co-parenting conflicts. On June 18, 2004, the District Court appointed Liz Dalton, with whom the parties had contracted on another occasion. The court specified that Ms. Dalton's authority and responsibilities were limited to the terms of the Special Master Agreement which, with respect to a parenting plan, provided that "[d]uring the contract term, Ms. Dalton will assist us design a Parenting Plan that will guide our long-term success as co-parents." The Agreement also stated, however, that Ms. Dalton "will honor all prior court orders and will not redesign any provision of a parenting plan unless [LaRue and Arne] agree to a modification."

¶8     The events giving rise to the present appeal took place in November and December 2004. On November 17, Ms. Dalton emailed the GAL concerning two recent incidents involving LaRue and a dispute over her midweek visitations. Specifically, Ms. Dalton alleged that two days earlier, LaRue had "refused to leave my home-office following her 4 p.m. appointment . . . until I had written or faxed a 'decision' in her favor." The situation apparently was resolved approximately five hours later when LaRue's boyfriend arrived at Dalton's home and persuaded LaRue to leave. In addition, Ms. Dalton related an incident wherein LaRue allegedly attempted to take the children from school at an unscheduled time and, in the process, injured the school principal. Ms. Dalton indicated that she was "considering suspending LaRue's parenting time until we can clearly draft an order (as a team effort) that spells out her parenting time in such a manner that she will agree to." Ms. Dalton requested a conference call to discuss the matter further.

4

¶9 The next day (November 18, 2004), based on Ms. Dalton's email, the GAL filed in the District Court a motion captioned "Emergency Ex Parte Motion for Order Suspending Parenting Time for Mother." Given "the severity of the incidents" described above and the fact that LaRue's next scheduled parenting time began that same day (November 18), the GAL requested that "LaRue's parenting time be suspended by this Court immediately until a team conference call can be held which can further delineate and clarify LaRue's responsibilities, and that plan agreed to by the parties or ordered by this Court." The District Court granted the GAL's motion on November 18 and further ordered that LaRue appear before the court on December 13, 2004, "to show Cause why this Order should not be made permanent."

¶10 At the December 13 hearing, however, the District Court did not address the show cause issue. Rather, the court focused on a report and proposed parenting plan (dated December 13, 2004) that Ms. Dalton had faxed to the parties and the court earlier that day. Both Arne and the GAL were in agreement with Ms. Dalton's recommendations (which included making Arne's residence the children's "primary residence" and restricting LaRue's summer time to "up to 4 weeks" with the children); however, LaRue's counsel raised a number of matters requiring clarification. Thus, the judge referred the parties and their respective counsel to his chambers to contact Ms. Dalton by telephone and work on the unresolved issues. The court also stated that it intended to adopt the elements of Ms. Dalton's report, though it was not adopting the report "as evidence," and that "[i]f [the parties] need to submit written amendments later or something comes to mind that you now see or hear or [the GAL] sees or hears, you'll all

5

have the same time frame to respond, and then I can enter the final order." Lastly, the court stated that it would be entering a temporary order that day incorporating Ms. Dalton's report with any modifications agreed upon by the parties.

¶11 The record does not disclose whether the parties in fact conferred with Ms. Dalton in the District Judge's chambers and, if so, what the outcome of that conference was. LaRue indicates in her briefs that the parties did not reach an agreement, that they returned home, and that they did not go back before the court for a hearing. In any event, the next action taken by the District Court was the entry on December 29, 2004, of an order stating only that the December 13, 2004, parenting plan developed by Ms. Dalton "is hereby adopted and made final." The next day, however, the court issued a second order vacating the court's November 18, 2004, order (which had suspended LaRue's parenting time) and stating that Ms. Dalton's December 13, 2004, parenting plan would govern "until otherwise determined by the court."

¶12 Given the apparent conflict between these two orders, the GAL filed a Request for Clarification. On March 3, 2005, the court issued an order clarifying that the December 30, 2004, order "is an interim order documenting the oral order of the Court as of the December 13, 2004 hearing" and that the December 29, 2004, order adopting Ms. Dalton's parenting plan "is the final order of the Court." LaRue filed a timely notice of appeal from the court's December 29, 2004, order.

**STANDARD OF REVIEW**

¶13 Our usual standard of review with respect to parenting plan modifications is as follows: we review the findings underlying a district court's decision to modify a

parenting plan to determine whether those findings are clearly erroneous; and when the findings upon which the modification decision is predicated are not clearly erroneous, we will reverse the district court's decision only where an abuse of discretion is clearly demonstrated. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, ¶ 9, 46 P.3d 49, ¶ 9. In a case such as this, however, where the allegation is that the district court made no such findings in the first place and the issue is whether the court's action conforms to statutory requirements, we are presented with a question of law, which we review *de novo*. *See In re T.H.*, 2005 MT 237, ¶ 35, 328 Mont. 428, ¶ 35, 121 P.3d 541, ¶ 35 ("We review a district court's interpretation and application of statutes for correctness."); *Wombold v. Assoc. Financial Services Co.*, 2004 MT 397, ¶ 30, 325 Mont. 290, ¶ 30, 104 P.3d 1080, ¶ 30 ("Issues of statutory interpretation are reviewed *de novo*."); *cf. State v. Williams*, 2003 MT 136, ¶ 8, 316 Mont. 140, ¶ 8, 69 P.3d 222, ¶ 8 ("Where . . . the issue on appeal is whether the trial court followed the statutory requirements for a sentence revocation, the question is a matter of law, and our review is plenary.").

## DISCUSSION

¶14 *Did the District Court err when it modified the parties' parenting plan without taking testimony, hearing evidence, and entering findings of fact and conclusions of law regarding a change in circumstances or the statutory criteria set forth in §§ 40-4-212 and -219, MCA?*

¶15 LaRue argues that that the District Court did not comply with the statutory criteria governing modifications to parenting plans. She points out that the court did not take any testimony, receive any evidence, or hear any arguments at the December 13, 2004,

7

hearing. As noted above, the District Court stated at that hearing that it was "*not* adopting [Ms. Dalton's] report as evidence" (emphasis added). Nor did the court enter any findings of fact and conclusions of law in conjunction with its December 29, 2004, order adopting Ms. Dalton's parenting plan. The court's failure to do so, LaRue concludes, is error. We agree.

¶16 Section 40-4-219(1), MCA, provides, in relevant part, that a District Court

> may in its discretion amend a prior parenting plan *if it finds, upon the basis of facts* that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. [Emphasis added.]

As this language makes clear, in order to modify the parties' existing parenting plan the District Court was required *first* to find (1) that a change had occurred in Jonah's and/or Savannah's circumstances and (2) that an amendment to the parenting plan was necessary to serve the children's best interests. (Section 40-4-212(1), MCA, sets forth a number of factors that a court shall consider in determining "the best interest of the child.") These two findings, in turn, were required to be based on facts that had arisen since the prior plan was entered or that were unknown to the court at the time the prior plan was entered.

¶17 Arne observes that "LaRue did not file any motions or notices requesting a hearing so that she could present testimony and evidence. Nor did she file any written amendments or specific objections to the December 13 parenting plan [proposed by Ms. Dalton]. LaRue did not request that the district court schedule another hearing so that she could present testimony and evidence." The GAL similarly points out that "neither party filed any objection or amendment in the twelve days before the court adopted [Ms.

8

Dalton's] parenting plan as its final order." However, this overlooks the requirements of the statute. In *In re Marriage of Oehlke*, 2002 MT 79, 309 Mont. 254, 46 P.3d 49, we characterized the statutory finding of changed circumstances as a "prerequisite" to amending a prior parenting plan and stated that "a district court may not modify an existing custody arrangement" without such a finding. *Oehlke*, ¶ 12.

¶18 As far as we can discern from the record, the District Court did not abide by the foregoing requirements of *Oehlke* and § 40-4-219(1), MCA. There is no explicit indication that the court found, based on new or previously unknown facts, a change in circumstances and then determined, in conformance with § 40-4-212(1), MCA, that adoption of the new plan was necessary to serve the best interests of the children. In contrast to its order of October 29, 2002 (*see* note 1, *supra*), the court's December 29, 2004, order consisted of a single sentence: "IT IS HEREBY ORDERED that the attached Parenting Plan developed by Elizabeth A. Dalton, Esq., is hereby adopted and made final." This is insufficient to satisfy the statute.

¶19 "Adequate findings and conclusions are essential for without them this Court is forced to speculate as to the reasons for the District Court's decision. Such a situation is not a healthy basis for review." *Jones v. Jones* (1980), 190 Mont. 221, 224, 620 P.2d 850, 852. *In re Marriage of Converse* (1992), 252 Mont. 67, 826 P.2d 937, illustrates this point. There was nothing in the record in *Converse* demonstrating that the statutory criteria for making custody determinations had been considered by the district court. We observed that "[i]f some or all of the factors were considered during the off the record conference between the trial judge and counsel for the parties, this is not reflected in the

9

record. Even if the relevant factors had been considered, there was nothing in the trial court's findings indicating the basis for the custody decision in relation to the factors." *Converse*, 252 Mont. at 71, 826 P.2d at 940. Given that a district court's findings should, "at a minimum, set forth the essential and determining facts upon which the [court] rested its conclusion on the custody issue," *Converse*, 252 Mont. at 71, 826 P.2d at 939 (internal quotation marks omitted), we remanded the case to the district court "to receive evidence relative to the statutory factors necessary for a determination of custody and for *explicit* findings setting forth at least the essential and determining facts upon which the District Court rests its conclusion on custody," *Converse*, 252 Mont. at 72, 826 P.2d at 940 (emphasis added; internal quotation marks omitted). *See also In re Marriage of Keating* (1984), 212 Mont. 462, 467, 689 P.2d 249, 252 (observing that an award of custody cannot be upheld "[a]bsent an indication that the trial court considered all of the statutorily mandated factors" and remanding the case to the district court "for appropriate findings . . . .").

¶20 Our holding in *Converse* mandates the same result here. Given the absence in the record of *any* findings by the District Court—let alone the prerequisite finding of a change in circumstances—supporting its December 29, 2004, order, the court's purported modification of the parties' parenting plan is invalid.

¶21 Lastly, we would simply note that the District Court's "clarification" order of March 3, 2005 (subsequent to the order at issue in this case), purported to grant LaRue's July 30, 2004, motion to "transfer jurisdiction" of the action to the courts of Utah.

However, no argument has been made with regard to this issue, and we decline to address it.

¶22    We therefore remand this case to the District Court to receive evidence relative to the statutory requirements necessary to modify an existing parenting plan and to enter findings setting forth the facts upon which the court rests its final determination, and for further proceedings as may be required.

¶23    Reversed and remanded.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS

11