DA 12-0205

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 17

IN RE THE MARRIAGE OF
SHEILA KLATT,

      Petitioner and Appellee,

  and

SHILOH W.B. KLATT,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Madison, Cause No. DR 06-14
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Shiloh W.B. Klatt, self-represented, Ennis, Montana

      For Appellee:

          Christopher J. Gillette; Law Office of Christopher J. Gillette;
Bozeman, Montana

                         Submitted on Briefs:    November 28, 2012
                                 Decided:    January 29, 2013

Filed:

                              _____
                                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Shiloh Klatt appeals the Fifth Judicial District Court's order amending a prior parenting plan and granting to his former spouse, Sheila Klatt, primary custody of their three children. We affirm.

¶2 We address the following issues on appeal:

¶3 *1. Did the District Court comply with § 40-4-219, MCA, when it amended the prior parenting plan?*

¶4 *2. Did the District Court err in determining the best interest of the Klatt children?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Shiloh and Sheila Klatt were married in Gallatin County, Montana, in 1993. Between the years of 1998 and 2002, the Klatts had a daughter and two sons: C.J.K., T.S.K. and C.S.K., respectively. In June 2006, after Sheila filed a petition for dissolution of their marriage, the Klatts entered a Marital Dissolution Agreement and Parenting Plan (June 2006 Parenting Plan), which provided in part that "the parties shall share alternate two weeks of parenting with the minor children, with all the children being together whenever possible. The parties shall each enjoy five weeks of uninterrupted parenting a year to allow for vacation time with the minor children." At that time, Sheila was a non-practicing licensed cosmetologist, who stayed at home full-time to care for the children. Shiloh worked as a self-employed certified public accountant (CPA) and

2

agreed to pay maintenance and child support to Sheila pursuant to the parenting plan. Following entry of the parenting plan, Shiloh often took the children on extended international trips during his parenting time.

¶6 On September 28, 2009, Sheila filed a motion to modify the June 2006 Parenting Plan. She stated that the Klatts had not followed the plan due to Shiloh's business activities and personal trips, which caused a significant decrease in his visitation with the children. Particularly during tax season—January through April—when Shiloh's professional activities increased, the children resided with Sheila on a full-time basis. Her motion alleged, "[t]he fact that the children are and have been spending substantially less time with their father than what is allowed in the existing parenting plan constitutes a substantial change of circumstances as contemplated by § 40-4-219[,] MCA." Shiloh filed a response denying that his business and personal trips had decreased his parenting time. He alleged that Sheila remained underemployed and, as a result of her financial difficulties, the parties had agreed to increase Shiloh's work during tax season so that he could provide additional support to the family.

¶7 After attending mediation in January 2010, the parties stipulated to hiring Christopher Hahn, Ph.D., as Guardian ad Litem and Parenting Plan Coordinator. They stipulated that Dr. Hahn would, among other things, "have some of the authority ordinarily reserved to the Court to make decisions clarifying, augmenting, implementing, adapting, and to a certain extent, interpreting and modifying the court-ordered parenting plan when the parents disagree." They agreed that Dr. Hahn would "base all decisions on

3

the best interests of the children." The District Court's April 2, 2010 order appointed Dr. Hahn as Guardian ad Litem, directed him to prepare a report of his observations of the family by June 4, 2010, and stated that the court would "review the results" of the Klatts' stipulation rather than mandate conformance to its terms. Dr. Hahn filed an Initial Report on June 4, 2010, stating that he had limited opportunity to observe the Klatts, particularly the interaction of the children with their father, and that he would file additional reports as he gathered information and spent more time with the family.

¶8 On October 25, 2010, Shiloh agreed to a temporary child residency arrangement, under which the Klatt children would reside with Sheila from September 1, 2010, through May 31, 2011, but would have varying weekend visitation with Shiloh. Beginning June 1, 2011, the children would continually alternate between three weeks with Shiloh and two weeks with Sheila until August 31, 2011, when the arrangement would expire.

¶9 On October 20, 2011, after observing the Klatt family for about one and one-half years, Dr. Hahn filed a full report. He recommended that "the parenting plan be amended to reflect the changes that were made by stipulation for the 2010/2011 school year." Dr. Hahn now had observed closely the interactions between the children and each parent, had on numerous occasions communicated individually with the Klatt children and each parent, and also had met once with the whole family. Dr. Hahn's report revealed that the Klatt children "strongly preferred" residing with their mother and emphasized, "[i]t is remarkable how strong, constant, and unified the opinions of the children have been throughout the duration of my term as parenting plan coordinator.

4

They have never wavered in their basic wishes." For that reason, Dr. Hahn suggested that the "wishes of the child," under § 40-4-212(1)(b), MCA, would be a "particularly relevant" factor in determining the best interest of the Klatt children. According to Dr. Hahn, the children expressed frustration with Shiloh's failure to provide for their basic needs and described experiences while in their father's care that caused them apprehension, fear, and anger—including an incident when Shiloh became angry while driving on the interstate highway and slammed on the brakes so hard that his vehicle, in which the children were passengers, spun 180 degrees in the roadway. Dr. Hahn concluded in summary, "I believe that the children would want more time with their Dad if their basic parenting needs are better met by him, but at the present time and for the entire period of time that I have been involved with this case, the children are highly frustrated and sometimes angry about the time they have to spend with their Dad."

¶10 On December 16, 2011, Shiloh filed a motion to dismiss Dr. Hahn and rescind the contract appointing him as Guardian ad Litem. He requested that the District Court strike Dr. Hahn's October 2011 report, as it was made after the court-ordered date of June 4, 2010, and was based on "factual misstatements." Sheila filed a response on December 30, 2011, reiterating her reasons for requesting an amendment to the parenting plan and suggesting that the District Court adopt Dr. Hahn's recommendations. On January 9, 2012, Shiloh filed a petition to hold Sheila in contempt under § 3-1-501(e), MCA, for failing to follow the court's orders and the June 2006 Parenting Plan. He alleged that Sheila had prevented, obstructed, or frustrated his contact with the children,

5

in particular his communication with their thirteen-year-old daughter, C.J.K. His supporting affidavit stated that Sheila had blocked calls from Shiloh to C.J.K., would not allow C.J.K. to speak with Shiloh alone, and, in January 2012, supported C.J.K.'s refusal to stay with Shiloh, in disregard of the June 2006 Parenting Plan.

¶11 The District Court held a hearing on February 13, 2012, in which it heard testimony from Sheila, Shiloh, Dr. Hahn and other witnesses, and questioned the parties. At the conclusion of the hearing, the court discussed on the record the § 40-4-212, MCA, factors used to determine the best interest of the child. The court found the evidence did not support Shiloh's allegation that Sheila had obstructed his communication and contact with the children and stated that "respect" had become an issue central to the family. The court stated that mutual anger existed between the children and their father, which could adversely affect the children, and noted the incident where Shiloh "slammed on the [brakes], the vehicle spun around and scared the kids badly." The court also stated that credible evidence indicated that "at least from time to time, if not constantly, the children are frightened." Shiloh had conceded during the hearing that he had on occasion over-disciplined the children. The court agreed with Dr. Hahn that the wishes of the children and the § 40-4-212, MCA, factors, including continuity and stability of care, were "cogent here" and expressed concern that if the historical divergence from the parenting plan continued, the children would experience a lack of structure and consistency. On February 29, 2012, the District Court ordered a new parenting plan

providing that the children primarily would reside with Sheila during the school year and granting Shiloh visitation on one weekday each week and every other weekend.

## STANDARD OF REVIEW

¶12 We review for clear error the findings of fact underlying a district court's decision to modify a parenting plan. *In re Marriage of Banka*, 2009 MT 33, ¶ 9, 349 Mont. 193, 201 P.3d 830 (citing *Jacobsen v. Thomas*, 2006 MT 212, ¶ 13, 333 Mont. 323, 142 P.3d 859). If its findings are not clearly erroneous, "we will reverse the district court's decision only where an abuse of discretion is clearly demonstrated." *Jacobsen*, ¶ 13 (citing *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49). We review de novo whether a court's action conforms to statutory requirements. *Jacobsen*, ¶ 13.

¶13 We have repeated on numerous occasions that the trial court's decision is to be accorded great deference because it "is in a better position than this Court to resolve child custody issues." *In re Marriage of Wilson*, 2009 MT 203, ¶ 15, 351 Mont. 204, 210 P.3d 170 (quoting *In re Marriage of McKenna*, 2000 MT 58, ¶ 17, 299 Mont. 13, 996 P.2d 386); *see also Pankratz v. Teske*, 2002 MT 112, ¶ 12, 309 Mont. 499, 48 P.3d 30.

## DISCUSSION

¶14 *1. Did the District Court comply with § 40-4-219, MCA, when it amended the prior parenting plan?*

7

¶15 Shiloh contends that the District Court erred by failing to make a finding of changed circumstances as required by § 40-4-219, MCA. Section 40-4-219(1), MCA, provides in relevant part as follows:

> The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

¶16 The District Court did not expressly discuss changed circumstances in its order, but, on the record, acknowledged the § 40-4-219, MCA, requirements and noted numerous facts that had arisen since the parties entered the June 2006 Parenting Plan. Our precedents provide that, while an explicit finding is "preferable," a district court may satisfy the requirement by "clearly stat[ing] the component parts of a change in circumstances finding[.]" *In re Marriage of Burk*, 2002 MT 173, ¶ 11, 310 Mont. 498, 51 P.3d 1149. We have reversed the district court's custody modification order when there is "no explicit indication that the court found, based on new or previously unknown facts, a change in circumstances[.]" *Jacobsen*, ¶¶ 18, 21 (remanding for entry of factual findings where the district court entered a one sentence order of modification and provided no account of the "evidence relative to the statutory requirements necessary to modify an existing parenting plan"); *see also Banka*, ¶¶ 8, 11 (reversing because the district court modified the parenting plan without holding a hearing or entering written findings and the Court was "unable to ascertain what essential and determining facts the District Court relied upon"); *see also In re Marriage of Whyte*, 2012 MT 45, ¶¶ 20, 24,

8

364 Mont. 219, 272 P.3d 102 (reversing decision to modify where the district court did not provide account of facts arising since prior parenting plan, and prior plan was "faithfully followed over many years and work[ed] well.").

¶17     In contrast, a change of circumstances has been established where, as here, the evidence showed facts that had arisen since the prior parenting plan—including the parties' failure to follow the plan. *See e.g. Burk*, ¶ 10 (father had moved the children to his parents' home when parenting plan ordered that children would reside with him at his residence); *In re Marriage of Robison*, 2002 MT 207, ¶ 34, 311 Mont. 246, 53 P.3d 1279 (the parties' actual arrangement differed from the parenting plan). Sheila points out that the parties sought the assistance of Dr. Hahn and entered a temporary parenting schedule because they agreed they had substantially deviated from the June 2006 Parenting Plan. The Klatts' stipulation confirms that Sheila and Shiloh expressly contemplated "modification of a court-ordered parenting plan through the informal process described in this Order." While the stipulation did not carry the force of a court order, it reflects the parties' agreement that the June 2006 Parenting Plan could be subject to modification.

¶18     Sheila also notes that the District Court expressed concern during the hearing, based in part on Dr. Hahn's commentary, that, during his parenting time, Shiloh had tended to over-discipline the children in a fashion that was "potentially abusive." Shiloh acknowledged that he had sometimes "lost control of my anger," grabbed the children "by the back of the neck and I've grabbed them by the hairs of the back of their neck." The District Court referred to these and other incidents when it concluded, "I understand

9

that the children are angry. It's very apparent their father is angry, too, very angry." Sheila testified that fear and a lack of mutual respect between Shiloh and the children had recently caused an increase in the children's behavioral issues. This testimony supports the District Court's decision that a change in circumstances required re-evaluating the best interest of the children.

¶19 Shiloh also argues that the District Court applied an incorrect legal standard when it amended the June 2006 Parenting Plan. He alleges that the court failed to make any findings of fact or conclusions of law relating to § 40-4-219, MCA, which governs amendment of the parenting plan, but instead relied on § 40-2-212, MCA, which lists the factors relevant to determining the "best interest of the child."

¶20 Section 40-4-219, MCA, provides that:

(1) . . . In determining the child's best interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:

(a) the parents agree to the amendment;

(b) the child has been integrated into the family of the petitioner with consent of the parents;

(c) the child is 14 years of age or older and desires the amendment;

(d) one parent has willfully and consistently:

(i) refused to allow the child to have any contact with the other parent; or

(ii) attempted to frustrate or deny contact with the child by the other parent; or

(e) one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent.

10

. . .

(3) The court shall presume a parent is not acting in the child's best interest if the parent does any of the acts specified in subsection (1)(d) . . . .

Contrary to Shiloh's assertion, the statutory language makes clear that, in deciding whether to modify a parenting plan, the court may rely on the factors listed in § 40-4-212, MCA, to determine the best interest of the child.

¶21 Shiloh argues that the District Court was required under § 40-4-219, MCA, to consider the allegations in his contempt petition and supporting affidavit that Sheila had denied him contact with C.J.K. He points out that Sheila conceded during the hearing that she had blocked Shiloh's calls to C.J.K.'s phone and supported C.J.K.'s decision not to return to Shiloh's custody as required by the June 2006 Parenting Plan. He contends that "[h]ad the court addressed § 40-4-219(3), it would have made a different conclusion in its determination of the best interests of the children[.]"

¶22 Section 40-4-219, MCA, provides the trial court broad discretion in evaluating which factors are relevant to the child's best interest and how much weight to give each factor—it states the court "may" consider the listed criteria in addition to those provided in § 40-4-212, MCA. Moreover, our review of the record reveals that the District Court considered the allegations in Shiloh's contempt petition and affidavit but found them unsupported by the evidence:

Now, as I've said that there isn't any evidence that Mother has maneuvered to try to place a wedge between Father and the children, I reiterate that; I don't see that's the case.

11

Sheila testified that she blocked Shiloh from contacting C.J.K.'s cell phone in response to "disrespectful" text messages he sent to C.J.K., including "You have no guts, you disgust me," and, "You make me sick." She stated that she also let Shiloh know at that time that he could contact the home to talk with the children. The District Court's discussion on the record indicates that it considered the § 40-4-219, MCA, factors, including subsection (3), and decided that they were not pertinent. We defer to its evaluation of the facts. "It is the function of the district court"—not the appellate court—"to resolve conflicts regarding evidence." *Pankratz*, ¶ 12. "Child custody cases often present the court with difficult decisions. We must presume that the court carefully considered the evidence and made the correct decision." *In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28 (quoting *In re Parenting of N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863). The court did not clearly err in determining that § 40-4-219(3), MCA, did not apply in this case and did not abuse its discretion in relying on the factors listed in § 40-4-212, MCA, when deciding the best interest of the children.

¶23    *2. Did the District Court err in determining the best interest of the Klatt children?*

¶24    Shiloh argues that the District Court erred in determining the best interest of the children because it failed to rule on his petition for contempt. He also reiterates his earlier argument that the court did not "adequately consider § 40-4-219(3)" and did not deliver sufficient findings of fact and conclusions of law.

¶25 Shiloh contends that the June 2006 Parenting Plan should have been enforced and that the court was obligated to hold Sheila in contempt for violating its terms. We disagree because the District Court addressed Shiloh's concerns during the hearing. Sheila's motion to modify the June 2006 Parenting Plan was pending for nearly two and one-half years, during which time the parties participated in mediation, hired a Guardian ad Litem, and attempted to resolve the differences that had arisen since entry of the initial plan. There was substantial evidence to show that Sheila had not willfully disregarded the terms of the parenting plan and the District Court's rulings make clear that it did not agree with Shiloh's position.

¶26 It bears emphasis that the District Court made findings as to each of the following § 40-4-212, MCA, parenting factors:

(a) the wishes of the child's parent or parents;

(b) the wishes of the child;

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

(d) the child's adjustment to home, school, and community;

. . . .

(h) continuity of and stability of care;

The evidence supported the District Court's findings that the children feared their father, were angered by him, felt frustrated by the lack of structure provided in his home, and desired unequivocally to be with their mother, even at times when they reported positive experiences with their father. The court was fully within its discretion when it concluded

13

that the wishes of the children, continuity of and stability of care, and other factors weighed in favor of modifying the parenting plan.

¶27    For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ Beth Baker


We concur:

/S/ Mike McGrath
/S/ Patricia O. Cotter
/S/ Michael E Wheat
/S/ Brian Morris