FILED

August 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0049

DA 15-0049

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2015 MT 228

IN RE THE PARENTING OF:

S.E.L.,

     a Minor Child,

SHAD M. LEMKE,

     Petitioner and Appellant,

    and

SIRI AANRUD,

     Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District, In and For the County of Sweet Grass, Cause No. DR 2012-48 Honorable Brenda Gilbert, Presiding Judge |

COUNSEL OF RECORD:

     For Appellant:

          Christopher J. Gillette, The Law Office of Christopher J. Gillette, PC, Bozeman, Montana

     For Appellee:

          Kevin S. Brown, Paoli & Brown, P.C., Livingston, Montana

Submitted on Briefs: June 10, 2015
Decided: August 11, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Shad Lemke appeals the findings of fact, conclusions of law, and order regarding final parenting plan entered by the Sixth Judicial District Court, Sweet Grass County, on August 27, 2014. We affirm, addressing the following issues on appeal:

¶2 *1. Did the District Court err by determining the child's best interests would be served by allowing her to relocate to Elko, Nevada, with her mother?*

¶3 *2. Did the District Court err by limiting Lemke's visitations with S.E.L. while she resides in Nevada?*

¶4 *3. Did the District Court err by denying Lemke's motion for relief from the judgment and request for a new hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Shad Lemke and Siri Aanrud have a daughter, S.E.L, born in 2008. The parties never married and by 2010 their relationship had ended. When S.E.L. was four months old, the parties moved to Shields Valley, Montana, where Aanrud primarily stayed at home to care for S.E.L. During the first year of S.E.L.'s life, Lemke periodically worked construction in Alaska and additionally spent time in Hardin, Montana, where he had purchased cattle.

¶6 Following the end of their relationship, Lemke and Aanrud co-parented S.E.L. over the next two years without formalizing a parenting plan. During that time S.E.L. resided primarily with Aanrud. On September 17, 2012, the parties executed a stipulated final parenting plan and formalized their custody agreement. Under that parenting plan,

2

S.E.L. resided with Aanrud Monday afternoons through Friday mornings, the days during which she attended school. For the remainder of the week, S.E.L. resided with Lemke.

¶7 Aanrud began dating a man she met online, Hal Barkdull, and the two eventually became engaged. Barkdull lives in Elko, Nevada, where he works as a heavy equipment operator. Because of Barkdull's ties to Elko, Aanrud decided to relocate there to live with him. Aanrud, who has a bachelor's degree in elementary education, was pursuing her master's degree in counseling, and was able to obtain an internship in a school there in her field of study, school counseling. Accordingly, Aanrud filed a proposed amended parenting plan, requesting that she be allowed to take S.E.L. with her to Elko. Lemke objected to the request and filed his own proposed amended parenting plan, requesting that he be granted primary custody of S.E.L. should Aanrud relocate to Elko. On August 22, 2014, the District Court held a hearing and issued its findings of fact, conclusions of law, and order regarding final parenting plan. The District Court concluded that Aanrud had been the primary parent of S.E.L. and she should be allowed to relocate to Elko with her.

¶8 Aanrud then submitted a final parenting plan for the court's approval. Lemke responded by filing a motion for clarification, requesting seven days of uninterrupted parenting time with S.E.L. whenever he elected to visit her in Nevada. Aanrud filed a response, arguing that the request was excessive and expressing concerns that Lemke would use such time in a punitive way and unduly interrupt S.E.L.'s life. As an alternative, Aanrud suggested that Lemke be permitted to visit S.E.L. one weekend per

3

month upon prior notice. On September 11, 2014, the District Court approved a final parenting plan that limited Lemke to one long weekend per month, upon notice, when school is in session. Lemke filed a motion for relief from judgment and a request for a new hearing, wherein he alleged that Aanrud had misled the court about the circumstances of her relocation and the conditions in which she and S.E.L. were living following the move. The court did not rule on the motion and it was deemed denied. Lemke appeals.

## STANDARDS OF REVIEW

¶9 When considering parenting plans, we review a district court's findings of fact for clear error. *In re Banka*, 2009 MT 33, ¶ 9, 349 Mont. 193, 201 P.3d 830. When findings of fact are supported by substantial credible evidence, we will affirm a district court's custody decision unless we determine there has been a clear abuse of discretion. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49. A district court does not abuse its discretion unless it acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in a substantial injustice. *Woerner v. Woerner*, 2014 MT 134, ¶ 12, 375 Mont. 153, 325 P.3d 1244. A district court has broad discretion when considering the parenting of a child, because it is better positioned to resolve custody issues. *In re Klatt*, 2013 MT 17, ¶ 13, 368 Mont. 290, 294 P.3d 391. We review a district court's ruling on a Rule 60(b)(2) motion for manifest abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451.

4

**DISCUSSION**

¶10   *1. Did the District Court err by determining the child's best interests would be served by allowing her to relocate to Elko, Nevada, with her mother?*

¶11   When deciding parenting matters, district courts are required to "determine the parenting plan in accordance with the best interest of the child." Section 40-4-212(1), MCA. In making these determinations, district courts are directed to consider "all relevant parenting factors." Section 40-4-212(1), MCA. The statute provides a non-exhaustive list of factors to be considered, including: the wishes of the parents; the interaction and interrelationship of the child with her parents; the child's adjustment to home, school and community; continuity and stability of care; and whether the child has frequent and continuing contact with both parents.

¶12   Lemke challenges several determinations made by the District Court and the manner in which those determinations were used in formulating the final parenting plan. First, Lemke asserts the court "relied almost exclusively" upon its determination that Aanrud was S.E.L.'s primary parent and argues the District Court ignored substantial evidence and testimony undercutting this conclusion. Specifically, Lemke notes that Aanrud testified that he, as the weekend parent, "technically" spent more time with S.E.L. than Aanrud did, considering the time S.E.L. was in school. Lemke offers that he presented "the most stable home environment for SEL throughout her life" and that he was always an equal partner in S.E.L.'s scholastic activities and her health care. Lemke argues the District Court adopted a "punitive attitude" regarding his absence from S.E.L.'s life for a period of time in 2013 when he was in California finishing

5

requirements necessary to receive his architectural degree. Lemke alleges the court improperly characterized this absence as lasting for six months, rather than five, and notes it was discussed with Aanrud in advance. Moreover, Lemke states that, while in California, he remained in constant contact with S.E.L.

¶13 Lemke argues the "unequivocal testimony by both parties and all of the witnesses involved" demonstrated S.E.L. was a well-adjusted child with many friends, living in Shields Valley her entire life, and that it would be in her best interest to remain there and maintain those relationships. Lemke asserts the court found fault with him for having an "active and involved relationship with his daughter" by heeding witness testimony that S.E.L. was often exhausted following weekends with her father, yet failed to consider that Aanrud and Barkdull made "no effort whatsoever" to explore opportunities for Barkdull to take employment in Montana, disregarding the consequences of a relocation upon S.E.L.

¶14 In response, Aanrud notes that the District Court heard "exhaustive testimony" from multiple witnesses that demonstrated Aanrud was indeed the primary parent, responsible for: getting S.E.L. ready in the mornings; taking her to school; cooking her meals; helping her with homework; scheduling her medical and dental appointments; signing her up for activities and classes; taking her to play with friends; and putting her to bed each night–all without receiving child support from Lemke. Aanrud offers that her decision to move to Elko came in response to her "impoverished life in a dead-end town with no opportunities," living off student loans and public assistance, with little chance to

6

use her education. Aanrud believed a move to Elko would allow her to make a new life with a new husband and provide her with opportunities to complete her education and secure employment, which would provide S.E.L. with a better life.

¶15 It is evident that the District Court fully considered the statutory factors when entering its determination. The court found that, for the early timeframe of S.E.L.'s life, the "evidence was very clear" that Aanrud was the primary caregiver for the child. The court referenced several exhibits demonstrating Aanrud largely shouldered the responsibility of taking S.E.L. to her medical and dental appointments. Additionally, the court referenced witness testimony supporting its conclusion that Aanrud was the "primary parent" of S.E.L.

¶16 With regard to the proposed relocation to Elko, the District Court referenced the living arrangements there for S.E.L. The court cited testimony that S.E.L. had formed a relationship with Barkdull. The court recognized that the relocation "will have emotional consequences for SEL, as she will be leaving friends behind, will be changing schools, and, most significantly, will have less parenting time with her father," but that S.E.L. was a "social child who makes friends easily" and that she "will maintain a strong relationship" with Lemke, despite the distance. Importantly, the court found that Aanrud was in the "best position to provide for stability and continuity of care for SEL," whether in Montana or in Nevada, and that "[i]t would be emotionally harmful to SEL to be deprived of the primary parenting role that Siri has provided" for her.

¶17 The District Court's determination that it would be in S.E.L.'s best interests to relocate with her mother to Elko was within its broad discretion, and supported by clear consideration of the statutory factors and witness testimony. The court recognized the potential difficulties S.E.L. would face following relocation, but ultimately found that remaining with Aanrud outweighed those difficulties. To be sure, Lemke provided evidence in his favor that could have led to contrary conclusions, but substantial evidence supported the District Court's findings and its custody decision, which included the determination that it was "convinced by the testimony" that S.E.L. would maintain a relationship with Lemke, was not an abuse of its discretion.

¶18 *2. Did the District Court err by limiting Lemke's visitations with S.E.L. while she resides in Nevada?*

¶19 When issuing its findings, conclusions and order regarding final parenting plan, the District Court adopted Aanrud's proposed interim parenting plan. That proposed plan provided Lemke parenting time with S.E.L. in Elko upon reasonable notice and due consideration of her school and activity schedule. Lemke filed a motion for clarification, requesting that he be granted up to seven days of uninterrupted parenting time on the occasions he visited Elko, during which time he would ensure that S.E.L. would attend school, complete her homework, and attend activities. Aanrud objected, arguing such an arrangement would be disruptive to S.E.L. and could be abused by Lemke.

¶20 In the final plan, the District Court provided that Lemke would be granted parenting time for one long weekend per month during the time S.E.L. is attending school. In addition, Lemke was required to give two weeks' notice before exercising this

8

parenting time. These visits were in addition to holiday and summer parenting time already awarded to Lemke.

¶21 Lemke argues the court failed to explain why his visitation must be limited, particularly if he was willing to make "the 18 hour round trip drive" to visit S.E.L. Lemke asserts the decision is contrary to the court's stated goal of providing the child continuity and stability of care, because he previously shared equal parenting time with S.E.L, and that the court is "bent on restricting" his contact. In response, Aanrud argues that the District Court did, in fact, clarify the plan as Lemke requested and required that both parents make concessions.

¶22 We conclude the District Court did not abuse its discretion when issuing the final parenting plan. The court listened to extensive testimony during the trial and demonstrated in its findings of fact a full consideration of the concerns raised by both parents. It considered the arguments made by both parties on Lemke's request for clarification of the parenting plan. While Lemke is not happy with the provisions governing his visits to Elko, there is nothing to support his claim that the court was "bent" on restricting his access to S.E.L. or that the court abused its discretion.

¶23 *3. Did the District Court err by denying Lemke's motion for relief from the judgment and request for a new hearing?*

¶24 On October 22, 2014, Lemke filed a motion for relief from judgment and request for a new hearing. Lemke cited M. R. Civ. P. 60(b)(2) as the basis for his motion, arguing new evidence had "come to light" that made it appear Aanrud had misled the court about the circumstances of her relocation. In short, Lemke argued Aanrud moved

9

to an apartment with a different address than the one provided to the court, and that it was actually an unfinished garage with no certificate of occupancy. The District Court did not issue an order on the motion and it was deemed denied.

¶25 On appeal, Lemke argues the court should have allowed additional testimony in light of the evidence of this "obvious deception," reasserting the claims made in his motion to the trial court. Aanrud offers that she responded to each of Lemke's "outrageous allegations," refuting them with "carefully kept records and photographic proof," including photographs of her Elko residence. Aanrud surmises the court took the arguments and evidence into account and recognized the motion as "another thinly-disguised attempt to harass . . . ."

¶26 It cannot be said with certainty why the District Court permitted Lemke's motion to be denied by operation of law. We review a court's denial of a Rule 60(b)(2) motion for manifest abuse of discretion. *Essex*, ¶ 16. Considering the nature of Lemke's claims and the documentation provided by Aanrud in response, we conclude the District Court did not abuse its broad discretion by implicitly denying the motion.

¶27 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

10