FILED

September 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0670

DA 14-0670

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 286N

IN RE THE MARRIAGE OF:

JOHN W. LINN, II,

      Petitioner and Appellee,

  and

LEAH D. LINN,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADR 12-501
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Leah D. Linn, self-represented; Ridgefield, Washington

      For Appellee:

          Jeremy S. Yellin, Attorney at Law; Havre, Montana

                         Submitted on Briefs:  August 26, 2015
                                 Decided:  September 29, 2015

Filed:

                                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Leah D. Linn (Leah) appeals the Final Parenting Plan entered by the Eighth Judicial District Court pursuant to its Findings of Fact, Conclusions of Law, and Decree of Dissolution. The matter was initially heard by a Standing Master, but due to irregularities in the recording of the proceeding, the District Court conducted a rehearing. We affirm.

¶3     John W. Linn, II (John) petitioned for a dissolution of the marriage on August 21, 2012. The couple has two minor children from their marriage. The matter was referred to the District Standing Master, and a trial was held on June 25, 2013. The Standing Master issued Findings of Fact, Conclusions of Law, and Final Decree of Dissolution, as well as a parenting plan, which designated Leah as the primary caregiver for the children.

¶4     John filed objections to the Standing Master's Findings, and moved for a rehearing on the custody matter. Due to technical difficulties with the recording equipment, the transcript of the proceeding before the Standing Master was incomplete, with many of the answers to cross-examination being inaudible. Thus, the District Court reheard the custodial portion of the dissolution matter. After the rehearing, the District Court issued

2

its own findings, conclusions, and a new Final Parenting Plan that named John as the primary caregiver for the children. Leah appeals from the Final Parenting Plan.

¶5 Leah argues the District Court erred in disregarding the parenting plan entered by the Standing Master in favor of a new plan adopted after the rehearing. We review a district court's decision de novo to determine whether it applied the correct standard of review to a standing master's findings of fact and conclusions of law. *See Anderson v. Deafenbaugh (In re G.J.A.)*, 2014 MT 215, ¶ 11, 376 Mont. 212, 331 P.3d 835. A district court applies a clear error standard of review to a standing master's order. *See In re Marriage of Doolittle*, 265 Mont. 168, 171, 875 P.2d 331, 334 (1994). Section 3-5-126(2), MCA, provides that district courts may conduct a hearing to review a standing master's findings and conclusions or order. "The court, after a hearing, may adopt the findings and conclusions or order and may modify, reject in whole or in part, receive further evidence, or recommit the findings and conclusions or orders with instructions." This language "lists various actions that may be taken by a district court upon receiving a master's findings; these actions may be taken only *if they are warranted by the record*, assessed in light of the applicable standard of review set forth in Rule 53." *Anderson*, ¶ 17 (emphasis added).

¶6 The District Court properly held the initial hearing to review John's objections, as provided for by § 3-5-126(2), MCA. The District Court did not merely disregard the Standing Master's parenting plan, but found itself unable to undertake an objective

review of that plan due to the incomplete record of the trial.[1] The District Court did not err by rehearing the matter and issuing its own Final Parenting Plan.

¶7 Leah next argues that the District Court erred by not allowing her minor daughter to testify telephonically at the rehearing. "We review a district court's evidentiary rulings for an abuse of discretion. Trial courts are vested with broad discretion to determine whether evidence is relevant and admissible, and this court will not overturn an evidentiary determination in the absence of an abuse of discretion." *Benjamin v. Torgerson*, 1999 MT 216, ¶ 15, 295 Mont. 528, 985 P.2d 734 (internal citation omitted). Given the specific concerns the District Court expressed regarding the young age of the child, and an unknown adult being present with the child while testifying over the telephone, we conclude the District Court did not abuse its discretion by disallowing the testimony.

¶8 Leah argues the District Court erred by failing to intervene when opposing counsel did not provide her with a witness list prior to the rehearing, and by communicating with opposing counsel while she was not present in the courtroom. Leah claims that she was unprepared for the testimony of Judith Young. However, Ms. Young, who is Leah's mother, was a witness at both the trial before the Master and the rehearing. Her presence and testimony at the rehearing should not have been a surprise. While there was no order requiring exchange of witness lists for the rehearing, it would have been appropriate for

---

[1] In determining whether or not to grant a rehearing, the District Court indicated it had reviewed the filings and trial transcript, and stated: "[G]iven the incomplete nature of the record that was developed before the standing master, I will grant a rehearing."

4

opposing counsel to have alerted Leah to the witnesses he intended to call. However, Leah does not establish that she was prejudiced by this oversight.

¶9 Likewise, Leah fails to show prejudice or error from the conversation between the District Court judge and opposing counsel that took place at the beginning of the rehearing. The conversation, which is duly recorded on the transcript, was regarding Leah's initial absence from the courtroom at the time for the hearing, and was in no way improper. Leah appeared shortly thereafter and the record shows no prejudice to her.

¶10 Leah asserts that the District Court failed to take into account all the relevant evidence regarding John's overall stability and ability to care for the minor children when issuing the Final Parenting Plan. Section 40-4-212(1)(a)-(m), MCA, provides the factors a court must consider when determining the best interest of a child, including (d) "the child's adjustment to home, school, and community," (h) "continuity and stability of care," and (l) "whether the child has frequent and continuing contact with both parents . . . ." The District Court specifically addressed all of these factors in the Final Parenting Plan, taking into account both Leah and John's contact with the children and their relative stability, and we will defer to the District Court's determination. *See In re Klatt*, 2013 MT 17, ¶ 13, 368 Mont. 290, 294 P.3d 391 ("We have repeated on numerous occasions that the trial court's decision is to be accorded great deference because it 'is in a better position than this Court to resolve child custody issues.'") (quoting *Pankratz v. Teske*, 2002 MT 112, ¶ 12, 309 Mont. 499, 48 P.3d 30).

¶11 Finally, Leah contends that the District Court judge erred when he failed to recuse himself due to a conflict of interest between the judge and a witness at the rehearing. Section 3-1-805, MCA, sets forth the steps for a party seeking disqualification of a judge. Leah admittedly did not file the affidavit required under the statute, nor did she formally object to the supposed conflict of interest at the time of the rehearing, ultimately failing to preserve the issue for appeal. In a similar argument, Leah claims that the District Court judge should have been disqualified under the Montana Judicial Code of Conduct, Rule 2.12, as the same judge presided over both John's misdemeanor sexual assault conviction and the custody rehearing.[2] Again, Leah did not actually raise an objection at the time, and thus failed to preserve this issue for appeal. "The general rule is that issues not raised before the trial court and new legal theories are not considered by this Court on appeal because it is unfair to fault the trial court on an issue it was never given an opportunity to consider." *Renner v. Nemitz*, 2001 MT 202, ¶ 14, 306 Mont. 292, 33 P.3d 255 (internal citation omitted).

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

---

[2] During witness questioning, the District Court sua sponte reminded the parties that he had presided over John's criminal case and was thus aware of the background of that matter, stating: "Okay. Let me just – I'm aware of all that. I mean, you know I presided over the criminal case. So I'm aware of all that. I'm aware of the history you guys had."

¶13    Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER